Filed 8/20/25  Stanford Health Care v. K.M. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| STANFORD HEALTH CARE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>K.M.,<br><br>    Defendant and Appellant. | H052897<br>(Santa Clara County<br> Super. Ct. No. 24MH053173) |

**THE COURT[1]**

Appellant K.M. was admitted to respondent Stanford Health Care on a 14-day commitment pursuant to Welfare and Institutions Code section 5250.[2]  The trial court denied K.M.'s petition for a writ of habeas corpus.  The court found that the mental health care practitioners treating K.M. while she was under the hold could administer psychotropic medications over her objection.  On appeal, K.M.'s appointed counsel filed a brief under *Conservatorship of Ben C.* (2007) 40 Cal.4th 529 (*Ben C.*) asking this court to independently review the record.  K.M. filed a supplemental brief asserting that she did not qualify for detention under section 5250.

---

[1] Before Greenwood, P. J., Lie, J., and Rodriguez, J. (Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.)

[2] Subsequent statutory references are to the Welfare and Institutions Code.

The trial court's denial of the petition for writ of habeas corpus is not an appealable order. We therefore dismiss the appeal.

## I. BACKGROUND

In October 2024, K.M. was admitted to Stanford Health Care and placed on a 14-day involuntary commitment based on her medical and psychiatric symptoms. K.M. filed a petition for writ of habeas corpus in the trial court, claiming that her detention was unlawful because she was not gravely disabled.

At the hearing on K.M.'s writ petition, her treating psychiatrist opined that K.M. refused treatment because her psychiatric condition prevented her from understanding the severity of her illnesses. K.M. presented to the hospital emergency department with shortness of breath and elevated heart rate, and expressed concern that these conditions were affecting her pregnancy. K.M. testified that she believed she was pregnant with twins based on an ultrasound performed at a clinic in August 2024. However, multiple pregnancy tests indicated that K.M. was not pregnant. K.M.'s treating psychiatrist testified that K.M. suffered from delusional thinking and paranoia, which manifested not only in her mistaken belief that she was pregnant, but also in her mistaken belief that she did not have thyroid disease, resulting in her refusal to accept necessary medical treatment. Because K.M. refused medication, the trial court held a "Riese hearing," after which the hospital commenced administering an antipsychotic medication to K.M.[3]

---

[3] The record on appeal does not include the transcript or resulting order from the "Riese hearing." In context, we understand the reference in the available record to refer to a hearing pursuant to *Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, in which the appellate court held that patients institutionalized under sections 5150 and 5250 had "statutory rights to exercise informed consent to the use of antipsychotic drugs in non-emergency situations absent a judicial determination of their incapacity to make treatment decisions." The treating psychiatrist's testimony, and the trial court's resulting order denying a "Riese Appeal" and determining that K.M.'s mental health practitioners could administer psychotropic medications over K.M.'s objection, suggests the trial court previously made such an order and was reviewing it at the hearing on K.M.'s writ petition.

The psychiatrist testified that hospital staff had not been able to verify that K.M. had a place to live if the hold expired. Nor could they find surrogate decision-makers for K.M., which raised concerns about the availability of a support system for K.M. if she left the hospital's care. Based on K.M.'s level of paranoia and distrust, the doctor was concerned that K.M.'s thyroid condition would worsen if she were released. The psychiatrist testified as an expert on the topics of grave disability and capacity to consent to medication treatment, and opined that K.M. remained gravely disabled and lacked capacity to consent to treatment with psychotropic medication. K.M. testified that she had a home and income, and was not delusional about her pregnancy or health conditions. She claimed that the hospital was attempting to hide her pregnancy because she alleged that the state governor was the father of the baby.

The trial court found that Stanford Health Care established by a preponderance of the evidence that K.M. was gravely disabled and suffering from delusions, rendering her unable to understand the risks and benefits of psychotropic medications. It denied the petition for writ of habeas corpus and ordered that K.M.'s treatment team could administer psychotropic medications over K.M.'s objection. K.M. appealed from the order.

Counsel was appointed to represent K.M. and pursuant to *Ben C.* filed a brief raising no arguable issues but asking this court to exercise its discretion to independently examine the entire record on appeal. K.M. submitted a supplemental brief contesting the factual basis for the trial court's denial of her petition for writ of habeas corpus.

## II. DISCUSSION

K.M. appeals from the trial court's order denying her petition of habeas corpus after she was subject to a 14-day commitment for involuntary treatment. The order is not appealable, and we have no alternative but to dismiss the appeal.

Under section 5250, where a professional has found that a person is gravely disabled due to a mental health condition, meaning they are unable to provide for basic

3

personal needs of food, clothing, or shelter (§ 5008, subd. (h)(1)(A)), and that person has been unwilling or unable to accept treatment on a voluntary basis, the person may be detained for up to 14 days of intensive treatment in a facility willing to admit the person. (*Conservatorship of K.P.* (2021) 11 Cal.5th 695, 707 (*K.P.*).)

The 14-day detention is a component of the progression of involuntary mental health commitments established in the Lanterman-Petris-Short Act (LPS Act). "Before a person may be found to be gravely disabled and subject to a year-long confinement, the LPS Act provides for a carefully calibrated series of temporary detentions for evaluation and treatment. 'The act limits involuntary commitment to successive periods of increasingly longer duration, beginning with a 72-hour detention for evaluation and treatment (§ 5150), which may be extended by certification for 14 days of intensive treatment (§ 5250). . . . After the initial 72-hour detention, the 14-day and 30-day commitments each require a certification hearing before an appointed hearing officer to determine probable cause for confinement unless the detainee has filed a petition for the writ of habeas corpus. [Citations.]' . . . [¶] This series of temporary detentions may culminate in a proceeding to determine whether the person is so disabled that he or she should be involuntarily confined for up to one year. [Citations.]" (*Ben C.*, *supra*, 40 Cal.4th at p. 541.)

Here, K.M. challenged the 14-day commitment by filing a petition of writ of habeas corpus in the trial court, and then by filing a notice of appeal from the trial court's denial of her petition for writ of habeas corpus. Appointed counsel filed a brief citing *Ben C.* indicating that they identified no viable issues on appeal. But *Ben C.* is not applicable here. (See *Ben C.*, *supra*, 40 Cal.4th at pp. 543-544 [setting forth procedures applicable on appeal from an appealable order reestablishing one-year conservatorship under the LPS Act].)

A certification for temporary detention is reviewed through a petition for writ of habeas corpus. "Someone certified for a 14-day . . . detention has the right to a prompt

4

certification review hearing.  (§§ 5254, 5256, 5270.15, subd. (b).)"  (*K.P.*, *supra*, 11 Cal.5th at p. 707.)  Alternatively, the detained person has a right to habeas corpus review.  (§ 5275.)  The remedy for the trial court's denial of such a writ petition is to file a new petition for writ of habeas corpus in the Court of Appeal.  (See *People v. Griggs* (1967) 67 Cal.2d 314, 317.)  The trial court's denial of a petition for writ of habeas corpus following a 14-day certification is not an appealable order.  (See *In re Clark* (1993) 5 Cal.4th 750, 767, fn. 7 ["no appeal lies from the denial of a petition for writ of habeas corpus"].)

As we do not have jurisdiction to consider an appeal from a nonappealable order, we must dismiss the appeal.  (*Woodman v. Ackerman* (1967) 249 Cal.App.2d 644, 646; *People v. Belknap* (1974) 41 Cal.App.3d 1019, 1029.)

### III.  DISPOSITION

The appeal is dismissed.

5